# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| CHRISTY D.S., <br><br> Plaintiff, <br><br> v. <br><br> NANCY A. BERRYHILL, Acting Commissioner of Social Security, <br><br> Defendant. | **MEMORANDUM DECISION AND ORDER AFFIRMING THE FINAL DECISION OF THE ACTING COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION** <br><br> Case No. 2:18-cv-00197-JNP-PMW <br><br> District Judge Jill N. Parrish <br> Chief Magistrate Judge Paul M. Warner |

Before the court is an appeal filed by Plaintiff Christy D.S. ("Plaintiff") seeking review of the final decision of the Acting Commissioner of the Social Security Administration ("Commissioner") denying her claim for disability insurance benefits ("DIB") under Title II of the Social Security Act (the "Act"), 42 U.S.C. §§ 401–434. The court has reviewed the written memoranda submitted by the parties and concludes that oral argument is not necessary in this case. After careful review of the administrative record, the parties' briefs, and the relevant law, the court finds no reversible legal error and concludes that the Commissioner's decision is supported by substantial evidence. The court therefore affirms the decision.

## BACKGROUND

Plaintiff filed an application for DIB in July 2014, alleging disability beginning in December 2011, due to both physical and mental impairments.[1] Her application was denied initially and on reconsideration.[2] After an administrative hearing before an administrative law

---

[1] *See* Administrative Record ("R.") at 53, 207–10, 223, ECF No. 12.

[2] *See* R. at 140–44, 147–49.

judge ("ALJ"),[3] the ALJ issued his decision against Plaintiff on January 26, 2017.[4] In his decision, the ALJ found that Plaintiff had not engaged in substantial gainful activity and had "severe" impairments that did not meet or medically equal a per se disabling impairment listed in 20 C.F.R. pt. 404, subpt. P, app. 1 ("Listing").[5] The ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform light work, with the following limitations:

1. Plaintiff could sit, stand, or walk six hours in an eight hour day;
2. Plaintiff could lift and carry twenty (20) pounds occasionally and ten (10) pounds frequently;
3. Plaintiff could frequently balance, stoop, kneel, and climb ramps or stairs; never climb ladders, ropes, or scaffolds; and occasionally crouch and crawl;
4. Plaintiff could occasionally reach overhead but frequently reach in all other directions with her left arm and frequently reach in all directions with her right arm;
5. Plaintiff could frequently handle, finger, and feel bilaterally; and,
6. Plaintiff was limited to understanding, remembering, carrying out, and making judgments on short and simple job instructions.[6]

Given this RFC and relying on the testimony of a vocational expert ("VE"), the ALJ found Plaintiff could perform jobs existing in significant numbers in the national economy.[7] Therefore, the ALJ found that Plaintiff was not disabled under the Act.[8]

**STANDARD OF REVIEW**

The court "review[s] the Commissioner's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Hackett v. Barnhart*,

---

[3] *See* R. at 75–111.

[4] *See* R. at 53–68.

[5] *See* R. at 55–58.

[6] *See* R. at 58.

[7] *See* R. at 67.

[8] *See* R. at 67–68.

2

395 F.3d 1168, 1172 (10th Cir. 2005)). The Commissioner's findings, "if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' It requires more than a scintilla, but less than a preponderance." *Lax*, 489 F.3d at 1084 (citation omitted) (quoting *Hackett*, 395 F.3d at 1172). In reviewing the ALJ's decision, the court cannot "reweigh the evidence" or "substitute" its judgment for that of the ALJ. *Madrid v. Barnhart*, 447 F.3d 788, 790 (10th Cir. 2006) (quoting *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991)). "[F]ailure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed [are] grounds for reversal." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (quoting *Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir. 1984)).

A five-step evaluation process has been established for determining whether a claimant is disabled. *See* 20 C.F.R. § 404.1520(a)(4)(i)–(v); *see also Williams v. Bowen*, 844 F.2d 748, 750–51 (10th Cir. 1988) (discussing the five-step process). If a determination can be made at any one of the steps that a claimant is or is not disabled, the subsequent steps need not be analyzed. *See* 20 C.F.R. § 404.1520(a)(4). The five-step sequential disability determination is as follows:

1. If the claimant is performing substantial gainful work she is not disabled.

2. If the claimant is not performing substantial gainful work, her impairment(s) must be severe before she can be found to be disabled.

3. If [the] claimant is not performing substantial gainful work and has a severe impairment(s) that has lasted or is expected to last for a continuous period of at least twelve months, and her impairment(s) meets or medically equals [a Listing], the claimant is presumed disabled without further inquiry.

4. If the claimant's impairment(s) does not prevent her from doing her past relevant work, she is not disabled.

3

5. Even if the claimant's impairment(s) prevent[s] her from performing her past relevant work, if other work exists in significant numbers in the national economy that accommodates her [RFC] and vocational factors, she is not disabled.

*Martin v. Barnhart*, 470 F. Supp. 2d 1324, 1326–27 (D. Utah 2006); *see* 20 C.F.R. § 404.1520(a)(4)(i)–(v); *Williams*, 844 F.2d at 750–51.

The claimant bears the burden of proof beginning with step one and ending with step four. *See Williams*, 844 F.2d at 750–51; *see also Henrie v. U.S. Dep't of Health & Human Servs.*, 13 F.3d 359, 360 (10th Cir. 1993). At step five, the burden of proof shifts to the Commissioner to establish "whether the claimant has the [RFC] 'to perform other work in the national economy in view of his [or her] age, education, and work experience.'" *Williams*, 844 F.2d at 751 (quoting *Bowen v. Yuckert*, 482 U.S. 137, 142 (1987)); *see* 20 C.F.R. § 404.1520(a)(4)(v). If it is determined that the claimant "can make an adjustment to other work," then she is not disabled. 20 C.F.R. § 404.1520(a)(4)(v). If, on the other hand, it is determined that the claimant "cannot make an adjustment to other work," she is disabled and entitled to benefits. *Id.*

## ANALYSIS

Plaintiff's opening brief challenges the ALJ's finding that her impairments did not meet a Listing,[9] and the ALJ's RFC finding.[10] The court notes that Plaintiff's opening brief is devoid of any citation to the record. This has made Plaintiff's arguments difficult for the court to evaluate. "[I]t is the appellant's responsibility to tie the salient facts, supported by specific record citation, to [her] legal contentions." *Streeter v. Berryhill*, 724 F. App'x 632, 635 (10th Cir. 2018) (alterations in original) (quoting *United States v. Rodriguez-Aguirre*, 108 F.3d 1228, 1237 n.8 (10th Cir. 1997)). Like the appellants in *Streeter* and *Parker v. Colvin*, 676 F. App'x 798 (10th Cir. 2017), Plaintiff

---

[9] *See* Appellant's Brief at 7–9.

[10] *See id.* at 9–12.

4

"merely recites the relevant standards and recounts the ALJ's decision, without pinpointing specific errors." *Parker*, 676 F. App'x at 800. Where Plaintiff does allege errors, they are generally conclusory and lack analysis.[11] However, because Plaintiff has cited to some authorities, and referred to the ALJ's decision, out of an abundance of caution the court will proceed with its analysis of the ALJ's decision under the standard described above.

## I. The ALJ Reasonably Found Plaintiff Did Not Meet or Equal a Listing

Plaintiff first challenges the ALJ's analysis at step three of the sequential evaluation process. At step three, the ALJ determines whether a claimant has an impairment or combination of impairments that meets a per se disabling listed impairment. *See* 20 C.F.R. §§ 404.1520, 404.1525. In order to meet a Listing, a claimant must show that her impairments meet "*all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). The claimant must also prove that her impairments meet the listing for a continuous period of at least twelve (12) months. *See* 20 C.F.R. § 404.1525(c)(4). Here, the ALJ concluded that Plaintiff did not meet the Listing 1.02(B) or 1.04.[12] The ALJ also found that Plaintiff's osteopenia and her history of exercise-induced syncopal episodes did not meet a Listing, and that Plaintiff did not meet a mental impairment Listing.[13] Plaintiff challenges the ALJ's findings regarding Listing 1.02(B) and his analysis regarding her syncopal episodes and mental impairment.

---

[11] *See, e.g.*, *id.* at 9 ("[T]he syncopal events should have a major play into the ability to perform work on a sustained basis."); *see also id.* at 11 ("Upon information and belief, if it is construed the Plaintiff could not perform any of these duties, then it would eliminate all jobs.").

[12] *See* R. at 55–58

[13] *See* R. at 57–58.

### a. *Listing 1.02(B)*

Listing 102 requires a major dysfunction of "one major peripheral joint in each upper extremity (i.e., shoulder, elbow, or wrist-hand), resulting in inability to perform fine and gross movements effectively, as defined in 1.00B2c." 20 C.F.R. pt. 404, subpt. P, app. 1, § 1.02(B). Section 1.00 defines the inability to perform fine and gross movements effectively as "an extreme loss of function of both upper extremities; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities." *Id.* § 1.00(B)(2)(c).

Plaintiff argues that the consultative examiner ("CE"), Tyler Hedin, M.D. ("Dr. Hedin"), "found that [Plaintiff] would have difficulty lifting heavy . . . objects," and that "[t]here was absolutely no discussion about 'ability to perform fine and gross motor movements'" in Dr. Hedin's report.[14] Plaintiff also complains that "[t]he ALJ could have sent this matter out for another CE to determine fine and gross motor movements."[15]

The ALJ found an impairment in only one upper extremity.[16] He found that Plaintiff could perform all manipulative activities frequently, except overhead reaching to the left, which was limited occasionally.[17] Because the ALJ found that Plaintiff did not have an extreme loss of function in *both* extremities, the ALJ reasonably found that Plaintiff did not meet Listing 1.02(B). *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 733 (10th Cir. 2005) ("[A]n ALJ's findings at other steps of the sequential process may provide a proper basis for upholding a step three conclusion that a claimant's impairments do not meet or equal any listed impairment.").

---

[14] Appellant's Brief at 8.
[15] *Id.*
[16] *See* R. at 55.
[17] *See* R. at 58.

Moreover, Plaintiff's allegation that Dr. Hedin's report did not discuss her ability to perform fine and gross motor movements is not supported by the record. Dr. Hedin opined that Plaintiff's "sensation and motion are intact," she has "normal manual dexterity," and that her injury "does not appear to limit her ability to work."[18] Therefore, the ALJ's decision was supported by substantial evidence in the record, and the ALJ was not required to further develop the record by ordering another consultative examination. *See Urioste v. Astrue*, No. CV 11-867 WPL, 2012 WL 13081277, at *5 (D.N.M. May 24, 2012) ("[I]f the record contains sufficient evidence on which the ALJ may base a decision regarding an impairment, the ALJ does not need to order a consultative evaluation.").

   **b.** *Syncopal Episodes*

The ALJ found that Plaintiff's "osteopenia and history of exercise-induced syncopal episodes did not meet" a Listing because "[h]er treating physicians were not able to identify a specific cardiovascular, pulmonary, or neurological cause for her pre-syncopal episodes, and the Listing of Impairments does not include a specific listing that addresses osteopenia."[19] Plaintiff does not appear to challenge the ALJ's finding regarding osteopenia, but argues that "the syncopal episodes could be analyzed under [Listing] 11.02" and that the ALJ erred by not doing so.[20] Listing 11.02 addresses epilepsy "documented by a detailed description of a typical seizure and characterized by" the seizures described in 11.02(A), (B), (C), or (D). 20 C.F.R. pt. 404, subpt. P, app. 1, § 11.02. But Plaintiff has made no argument as to how her impairments meet Listing 11.02.

---

[18] R. at 386.

[19] R. at 57.

[20] Appellant's Brief at 8.

Moreover, the ALJ's finding that these impairments do not equal a Listing is supported by substantial evidence in the record. State agency physicians considered whether Plaintiff met or equaled a Listing, and determined that she did not,[21] and the ALJ gave these uncontradicted opinions great weight.[22] Accordingly, the court finds that Plaintiff's argument that the ALJ erred in finding that her syncopal episodes did not meet a Listing is without merit.

### c. *Mental Impairments*

Finally, Plaintiff asserts that "there was no analysis on how [the ALJ] came up with [his] explanation" for his finding that Plaintiff did not meet a mental health listing and, ironically, that "[t]here are no citations or references to the record in support of the [ALJ's] findings."[23] But the court disagrees. The ALJ explained his analysis and cited to the record. The ALJ found that Plaintiff's "mental impairments caused her to have moderate limitations in her ability to understand, remember, or apply information, mild limitations in her ability to interact with others, moderate limitations in her ability to concentrate, persist, or maintain pace, and mild limitations in her ability to adapt or manage herself."[24] The ALJ noted that Plaintiff "had borderline working memory, borderline processing speed, and a borderline full-scale IQ score."[25] Because Plaintiff did not have two marked limitations or one extreme limitation, the ALJ concluded that she did not meet a mental health Listing.[26] Contrary to Plaintiff's assertion, the ALJ supported his conclusion by expressly citing specific clinical and test findings, as well as "the opinion of the state agency

---

[21] *See* R. at 122, 136.

[22] *See* R. at 57.

[23] Appellant's Brief at 8.

[24] *See* R. at 57, 378–79.

[25] *See id.*

[26] *See* R. at 57–58.

psychological consultant who evaluated [Plaintiff's] mental impairments at the reconsideration level."[27] Plaintiff does not explain how her impairments are more limiting than what the ALJ found, or how her impairments meet or equal a Listing. For these reasons, the court concludes that the ALJ's finding with regard to Plaintiff's mental impairments is supported by substantial evidence in the record, and he did not err in concluding that Plaintiff does not meet a Listing.

## II. The ALJ Reasonably Assessed Plaintiff's RFC

Plaintiff challenges the ALJ's RFC finding, arguing that: a) the ALJ improperly determined Plaintiff's ability to sustain work; b) the ALJ did not consider all of Plaintiff's severe and non-severe impairments; c) the RFC with respect to mental impairments was too vague; d) the RFC did not properly account for Plaintiff's moderate limitations; and, e) the ALJ improperly discounted subjective reports. The court will address each of these arguments in turn.

### a. *Ability to Sustain Work*

Without citing to the record, Plaintiff asserts that "[i]t is clear from the records and testimony . . . the sustainability of [her] employment was mainly at question," and "the syncopal events should have a major play into the ability to perform work on a sustained basis."[28] But Plaintiff fails to explain how her presyncope would interfere with her ability to sustain work. The record indicates that Plaintiff has experienced presyncope for more than twenty-five (25) years[29] but she nevertheless worked full-time through at least 2009.[30] The evidence in the record therefore supports the ALJ's conclusion that Plaintiff could sustain work despite her presyncope.

---

[27] *Id.*

[28] Appellant's Brief at 9.

[29] *See* R. at 506.

[30] *See* R. at 86, 233.

9

### b. *The ALJ Considered All of Plaintiff's Severe and Non-Severe Impairments*

An ALJ must consider all of a claimant's impairments, both severe and non-severe, in assessing the RFC. *See* 20 C.F.R. § 404.1545(a)(2). Plaintiff argues that in assessing her RFC, the ALJ erred by failing to consider Plaintiff's "ability to read, do math, effects of her asthma and use of her inhaler during certain seasons, double vision and diplopia, loss of hearing at high frequencies and her ability to be around noisy environments, [and] her distractibility or missing work."[31] Plaintiff also asserts that the ALJ should have considered her fibromyalgia and low IQ score.[32]

Again, these assertions are not supported by citation to the record and are largely conclusory. In addition, the court concludes that this argument is without merit because the record shows that the ALJ did consider all of Plaintiff's impairments. The ALJ stated that he considered Plaintiff's impairments singly and in combination. *See Flaherty v. Astrue*, 515 F.3d 1067, 1071 (10th Cir. 2007) ("[O]ur general practice . . . is to take a lower tribunal at its word when it declares that it has considered a matter." (alteration in original) (quoting *Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005))). Moreover, the ALJ expressly considered Plaintiff's learning difficulties, borderline intellectual functioning, fibromyalgia, and asthma.[33]

As part of her argument that the ALJ did not consider all of her impairments, Plaintiff also argues that the ALJ erred in discounting the opinion of her therapist, Jessica Coffin ("Ms. Coffin").[34] But Ms. Coffin was neither an acceptable medical source nor a treating source, and her opinion could never be entitled to controlling weight. *See* 20 C.F.R. §§ 404.1502, 404.1513(a)(2), 404.1527(c)(2). The ALJ gave Ms. Coffin's opinion little weight because "she did not start seeing

---

[31] Appellant's Brief at 9–10.

[32] *See id.* at 10.

[33] *See* R. at 61, 63.

[34] Appellant's Brief at 10.

Plaintiff for therapy until almost three months after her date of last insured."[35] Plaintiff does not explain why Ms. Coffin's opinion should have been given greater weight, and "[i]n the case of a nonacceptable medical source . . . , the ALJ's decision is sufficient if it permits us to 'follow the adjudicator's reasoning.'" *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1164 (10th Cir. 2012) (quoting SSR 06–03p, 2006 WL 2329939, at *6). For these reasons, the court concludes that the ALJ did not commit reversible error in evaluating Plaintiff's severe and non-severe impairments.

### c. *The ALJ's RFC Determination is Not Vague or Non-Sensical*

Plaintiff's argument that the ALJ's determination regarding Plaintiff's limitations with respect to mental impairments are "too general and don't have much meaning" and that "[u]pon information and belief, if it is construed the Plaintiff could not perform any of these duties, then it would eliminate all jobs"[36] is so under-developed, it hardly warrants the court's attention. The ALJ was clear in his decision, stating, "[Plaintiff's] ability to understand, remember, and carry out job instructions was limited, but she was able to understand, remember, and carry out short, simple instructions. Her ability to make judgments in work-related decisions was impaired, but she was able to make simple work-related decisions."[37] Accordingly, the court finds Plaintiff's argument that the ALJ's decision is "too general" to be without merit.

### d. *The ALJ Accounted for Plaintiff's Moderate Limitations*

Next, Plaintiff asserts that the ALJ erred in his step three analysis because the moderate limitations the ALJ found "do not encompass or correlate with moderate limitations in the B criteria."[38] Here, the ALJ accounted for his finding that Plaintiff had moderate limitations in

---

[35] R. at 65.

[36] Appellant's Brief at 11.

[37] R. at 58.

[38] Appellant's Brief at 11.

understanding, remembering, and applying information and concentrating, persisting, and maintaining pace, by limiting Plaintiff to short, simple instructions.[39] Plaintiff fails to explain how she was more limited than what the ALJ found. Accordingly, the court finds this argument is also without merit.

### e. *The ALJ Permissibly Discounted Subjective Reports*

The ALJ must consider a claimant's subjective complaints in determining whether or not she is disabled. *See* 20 C.F.R. § 404.1529. An ALJ's findings weighing a claimant's subjective complaints are entitled to "particular deference," because "he or she is uniquely able to observe the demeanor and gauge the physical abilities of the claimant in a direct and unmediated fashion." *White v. Barnhart*, 287 F.3d 903, 910 (10th Cir. 2001). In evaluating the claimant's subjective complaints, the ALJ determines to what extent the claimant's symptoms are consistent with the objective medical and other evidence. *See* 20 C.F.R. § 404.1529(a)–(c).

Plaintiff complains that "[n]owhere in the opinion did the [ALJ] accept, cite to or agree with the testimony of the Plaintiff" or the "opinions or findings of the treating physicians."[40] However, the record demonstrates that the ALJ did consider Plaintiff's subjective reports but permissibly discounted them, noting that they were inconsistent with the objective medical evidence and treatment history.[41] *See* 20 C.F.R. § 404.1529(c)(4) (stating that the ALJ "will consider whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between [claimant's] statements and the rest of the evidence"); *White v. Berryhill*, 704 F. App'x 774, 778 (10th Cir. 2017) ("A claimant's failure to seek medical treatment is a proper

---

[39] *See* R. at 57–58.

[40] Appellant's Brief at 12.

[41] *See* R. at 62–63.

factor in assessing the credibility of a claim of severe impairment."). Moreover, Plaintiff does not identify which opinions of "treating physicians" she believes the ALJ failed to properly consider. For these reasons, the court finds that the ALJ did not err in evaluating Plaintiff's subjective reports.

## **CONCLUSION AND ORDER**

For all the foregoing reasons, the court concludes that the ALJ's findings are supported by substantial evidence in the record, and the correct legal standards were applied. Accordingly, the Commissioner's decision denying Plaintiff's claims for DIB is hereby AFFIRMED.

IT IS SO ORDERED.

DATED March 28, 2019.

BY THE COURT:

*Jill N. Parrish*

JUDGE JILL N. PARRISH
United States District Court